IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CARLOS ARAGON,**

    Plaintiff,

v.                                                                                                   No. 16-CV-1378 JP/KRS

**CHRISTINE SALAZAR,**
**OFFICER CHAVIRA, and**
**CAPTAIN DEBERRY,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

On September 21, 2017, Plaintiff Carlos Aragon, *pro se*, filed a three-count amended complaint[1] asserting that while he was incarcerated prison officials violated his constitutional rights under 42 U.S.C. §1983. On March 19, 2018, Defendants Officer Chavira and Captain Deberry (Defendants) answered.[2] In their Answer, these two Defendants argue that as to them[3] Plaintiff has failed to state a claim for which relief may be granted under Fed. R. Civ. P. 12(b)(6) and that Plaintiff's claims are barred for failure to exhaust administrative remedies under the

---

[1] *See* AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (Doc. No. 19) (Amended Complaint). Plaintiff timely filed his first Complaint on December 19, 2016 (Doc. 1). On August 21, 2017, Judge Hansen dismissed Plaintiff's Complaint without prejudice. MEMORANDUM OPINION AND ORDER DISMISSING CIVIL RIGHTS COMPLAINT (Doc 15). In the Order, among other things, Judge Hansen found that Plaintiff's complaint did not clearly state a claim. The Order gave Plaintiff leave to amend his Complaint within thirty days and denied all other relief.

[2] *See* DEFENDANTS CHAVIRA AND DEBERRY'S ANSWER TO AMENDED COMPLAINT (Doc. 31) (Answer).

[3] On January 31, 2018, the Notice and Waiver of Service forms sent to Defendant Christine Salazar on Plaintiff's Amended Complaint returned to the Clerk's Office as undeliverable (Doc. 25). On February 26, 2018, the Court entered an ORDER TO SHOW CAUSE (Doc. 27) why this case should not be dismissed as to Defendant Christine Salazar and as to a fourth defendant, Officer Thorton, for Plaintiff's failure to provide correct addresses. On July 3, 2018, Plaintiff provided a new address for Christine Salazar (Doc. 38). On July 18, 2018, the Court entered an ORDER (Doc. 40) directing Issuance of Notice and Waiver of Service Forms to Christine Salazar . Because Plaintiff did not provide a correct address for Officer Thorton, the Court entered an ORDER (Doc. 41) dismissing him without prejudice from the case. As of this date, there has been no return of service and no entry of appearance on Defendant Christine Salazar's behalf.

1

Prison Litigation Reform Act, 42 U.S.C. § 1997(a) (PLRA).

On March 29, 2018, the Court *sua sponte* entered an order[4] requiring Plaintiff to show cause in writing why the Court should not dismiss each claim against Defendants[5] for failure to exhaust administrative remedies. On April 5, the Court entered an order[6] granting Plaintiff an extension until July 2, 2018 to respond to the Court's Order to Show Cause. On April 20, 2018, Plaintiff filed a response[7] to the Order to Show Cause. On July 18, 2018, the Court entered an order[8] finding that Plaintiff had made a preliminary showing that administrative procedures were unavailable to him and directing Defendants to respond. On August 1, 2018, Defendants responded[9] to the July 18th Order. Defendants' Response asked for summary judgment on all three claims.

On September 6, 2018, the Court held a hearing on the Order to Show Cause. At the hearing, Paula Ganz appeared on behalf of Defendant Captain Deberry, who was present, and on behalf of Defendant Officer Chavira, who was not present. Plaintiff Carlos Aragon did not appear. The Court did not hear oral argument.

After considering the pleadings, the briefing and all arguments in Plaintiff's Amended Complaint, Defendants' Answer, Plaintiff's Response, and Defendants' Response and after finding that Plaintiff had adequate notice of the Order to Show Cause and of the time and place of the September 6, 2018 hearing, the Court will grant summary judgment on all claims as to Defendants Officer Chavira and Captain Deberry.

---

[4] *See* ORDER TO SHOW CAUSE WHY THIS CASE SHOULD NOT BE DISMISSED (Doc. 34) (Order to Show Cause).
[5] Herein the Court uses the term "Defendants" to refer collectively only to Officer Chavira and Captain Deberry.
[6] ORDER (Doc. 36).
[7] *See* RESPONSE (Doc. 37) (Plaintiff's Response).
[8] ORDER (Doc. 39) (July 18th Order).
[9] DEFENDANTS ANTONIO CHAVIRA AND STEPHEN DEBERRY'S BRIEF REGARDING AVAILABILITY OF ADMINISTRATIVE REMEDIES AS ORDERED BY THE COURT (Doc. 42) (Defendants' Response).

# I. **BACKGROUND**

For the purposes of this Order, the Court assumes the truth of the following facts taken from Plaintiff's pleadings and briefing:

From September 22, 2009 through December 30, 2013, Plaintiff was at Central New Mexico Correctional Facility (CNMCF). Amended Complaint (Doc. 19), Exhibit D, p. 17.[10] On December 20, 2013, Plaintiff was discussing his fears about his personal safety at CNMCF with Captain Deberry, a corrections official, when Plaintiff fell, hit his head, and suffered head injuries. There are two versions of what caused the fall: either Plaintiff fainted during the conversation with Captain Deberry and no one else was present; or Captain Deberry, Officer Chavira, and Officer Thorton[11] were present during the conversation, and Officer Chavira and Officer Thorton caused Plaintiff to fall and hit his head.[12] *See* Amended Complaint (Doc. 19), Exhibit E, p. 20 (speaking with Captain Deberry); Plaintiff's Response (Doc 37), Informal Grievance p. 10-11 (emotional impact became so great Plaintiff "physically lose [sic] consciencous [sic]"),[13] Formal Grievance, p. 20 (speaking with "Officer Deberry"[14] when "the mental and physical impact from months of confusion and disappointment became to [sic] great for me to handle and in the strip cage as Officer Deberry was talking to me, I lost consciousness, fell to the floor striking my head"); *but see* Amended Complaint, Declaration 1 (Doc. 37), pp. 37-38 (inmate Daniel Munoz learned that Plaintiff had been physically assaulted in the strip cage

---

[10] The Clerk's Office has separately numbered each page of the Amended Complaint (Doc. 19) with a stamp in its heading. The Plaintiff numbered each of the Amended Complaint's exhibits separately. For ease of reference, when indicating page numbers, the Court will use the Clerk's Office numbers.
[11] The Court has dismissed without prejudice Officer Thorton from this case. *See* ORDER (Doc. 41), and *supra* footnote 3.
[12] It is immaterial for the purposes of this ruling which version of events is true.
[13] As with Plaintiff's Amended Complaint, the Clerk's Office has separately numbered each page of the Plaintiff's Response (Doc. 37) with a stamp in its heading. For ease of reference, when indicating page numbers, the Court will use the Clerk's Office numbers
[14] Although Plaintiff names Captain Deberry as a Defendant, Plaintiff refers to Captain Deberry as Officer Deberry in the Formal Grievance.

by Officers Chavira and Thorton), Declaration II, pp. 39-40 (same), Declaration III pp. 41-42 (same).

Subsequently, Plaintiff was taken to the infirmary. Amended Complaint (Doc. 19), p. 21. After medical staff treated Plaintiff, CNMCF put Plaintiff into protective segregation until December 30, 201 when Plaintiff was transferred to Western New Mexico Correctional Facility (WNMCF). *Id.*

On February 4, 2014, Plaintiff filed an Informal Grievance with WNMCF based on the December 20, 2013 events at CNMCF (Informal Grievance). Plaintiff's Response (Doc. 37), Informal Grievance, p. 10. The Informal Grievance is stamped received on February 10, 2014, and given tracking number 14-029. *Id.* at 10.

The Informal Grievance alleges that on December 20, 2013 Plaintiff learned CNMCF would protectively segregate him. *Id* at 10-11. That information coupled with the stress Plaintiff felt because of fear for his personal safety at CNMCF caused him to faint and fall. *Id*. The Informal Grievance further contends that: 1) Plaintiff did not received adequate medical care for his head injury; and 2) Plaintiff's injury was the result of emotional infliction of pain as prison correction officials were intentionally discriminating and retaliating against him because of his sex-offender conviction. *Id*. at 10. The Informal Grievance requests that the department of corrections "meet their obligation to provide a medical care system that meets the minimal standards of adequacy." *Id*. at 11.

The Informal Grievance names only CNMCF, Corizon Inc., and case manager Christine Salazar. *Id.* at 10. The Informal Grievance does not allege that Captain Deberry or Officer Chavira bore any responsibility for the fall, the head injuries, mental or physical pain or for discrimination and retaliation. The Informal Grievance states that the fall occurred "because

[Plaintiff] did physically lose [sic] consciencous [sic]." *Id.* p. 11.

When Plaintiff did not receive an official response to his Informal Grievance, he spoke with WNMCF unit manager Mrs. Barela. *Id.* at 3. She told him WNMCF would not act on his Informal Grievance and would not forward it to CNMCF. *Id.* at p. 11, Plaintiff's Affidavit, at 12.

On February 18, 2014, Plaintiff filed a Formal Grievance and mailed it to the grievance officer at CNMCF (Formal Grievance). Plaintiff's Response (Doc. 37), Formal Grievance, pp. 4, 13.[15] The Formal Grievance includes a face sheet and a handwritten account of Plaintiff's complaints.[16] On the face sheet, Plaintiff does not name Defendants Officer Chavira or Captain Deberry. The Formal Grievance requests, "[i]mmediate release to my hometown of Aragon, NM. Pursuant to a proper and legal investigation of the proposed residence." *Id.* at 13. A grievance officer marked the Formal Grievance received on February 28, 2014. *Id.* On March 6, 2014, the grievance officer returned the Formal Grievance to Plaintiff as nongrievable for the following reasons: the grievance was not timely and there were other "multiple issues, nongrievable issue." *Id.* The grievance officer's response references an attachment that is not included with the denial.

Plaintiff begins the handwritten part of the Formal Grievance with a statement that he has had two parole plans denied." *Id.* at 18. Plaintiff attributes to Christine Salazar the denial of his parole plans. *Id.* In the Formal Grievance, Plaintiff makes no claims against Officer Chavira. The Formal Grievance mentions Captain Deberry in two ways: 1) it states that Captain Deberry informed Plaintiff that Captain Deberry would be putting Plaintiff in protective segregation; and 2) that Captain Deberry was talking to Plaintiff when Plaintiff lost consciousness. *Id.* at 20.

---

[15] On page 18 of Plaintiff's Response is a four-page handwritten complaint dated February 18, 2014 separated from the face sheet by four pages. *Id.* at pp. 19-21. This appears to be the substantive portion of the Formal Grievance and the Court references it as such.

[16] Defendants state that while they have a record that the Formal Grievance was filed, Defendants have not been able to locate it in its entirety.

Nowhere in the Formal Grievance does Plaintiff claim that either Officer Chavira or Captain Deberry harmed him.

After the return of the Formal Grievance, Plaintiff believed the Formal Grievance to be a "closed matter in the grievance department." *Id.* at 5. Subsequently, on March 5, 2014, Plaintiff indicates that he mailed an appeal letter to Secretary of Corrections Greg Mercantel, as well as letters to Gary King, the Attorney General, and WNMCF Warden Joe Garcia. *Id.* at 8. Plaintiff did not provide the Court with copies of these letters.[17] Plaintiff states that after he wrote to Warden Garcia he 'began to receive [sic] some positive information about his release." *Id.*

Plaintiff's Amended Complaint lists the following three causes of action under § 1983:

Claim I: Plaintiff was intentionally deprived of a liberty interest in freedom from restraint in violation of the Fourteenth Amendment;
Claim II: Plaintiff was subject to cruel and unusual punishment based on discrimination in parole practices in violation of the Eighth Amendment;
Claim III: Plaintiff was subject to cruel and unusual punishment by the failure of prison official to protect him in violation of the Eighth Amendment.

Amended Complaint (Doc. 19), at pp. 2-4, Attachment D-Claim I, pp. 1-5, Attachment D-Claim III, pp. 1-5. Claims I and II name only Defendant Christine Salazar, alleging that Defendant Salazar sabotaged and prevented Plaintiff's physical release from prison after Plaintiff received parole. *Id.* at pp. 1-3, 12-16. Claim III argues that Plaintiff's Eighth Amendment rights were violated when Defendant Christine Salazar initiated events that led to Plaintiff's head injury, and subsequently, Defendants Captain Deberry and Officer Chavira either caused the head injury or failed to protect Plaintiff from the fall that caused the injury. *Id.* at pp. 4, 17-21; Declarations I, II, III, pp. 37-44.

Defendants' Answer asks for dismissal on all claims under Fed. R. Civ. P. 12(b)(6),

---

[17] In the Appendix of Plaintiff's Response, Plaintiff includes a copy of a response to a letter he wrote to Jonathan Smith, from the Civil Rights Division in the Department of Justice. Plaintiff's Response (Doc. 37), pp. 16-17. Mr. Smith's letter informs Plaintiff that his complaints do not fall within the ambit of the Civil Rights Division.

while Defendants' Response asks for summary judgment on all claims.

## II. LEGAL STANDARD

### A. Summary Judgment Standard

In Defendants' Answer, Defendants ask the Court to dismiss all claims under 12(b)(6) whereas Defendants' Response asks for summary judgment on all claims. "A 12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court' and 'all parties … [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'" *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Fed. R. Civ. P. 12(b)). Both Plaintiff's Response and Defendants' Response attach materials, including Affidavits, Declarations, Policy Manuals, Records detailing Complaints and actual Complaints. In making its findings, the Court considered the pleadings, the briefing and all materials attached to the briefing. The Court will therefore, consider all Defendants' requests for relief as motions for summary judgment.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party on the issue," and "[a]n issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citations and internal quotations omitted). In reviewing a motion for summary judgment, the Court views "the evidence and its reasonable inferences in the light most favorable to the non-movant." *Id*. Before a court entertains a summary judgment motion, the opposing party must

have an adequate time to respond. Fed. R. Civ. P. 56(f).

Here, Defendants ask for summary judgment on Claims I and II because neither claim makes factual or legal allegations against them. Defendants argue that the Court should grant summary judgment on Claim III because Plaintiff failed to exhaust his administrative remedies as required under the PLRA.

**B.     The  PLRA Exhaustion Requirement**

The PLRA provides that "a prisoner confined in any jail, prison, or other correctional facility" may not bring a claim under § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). An inmate need not exhaust unavailable remedies. *Ross v. Blake*, 136 S. Ct.  1850, 1858 (2016). The PLRA exhaustion requirement is mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Whether a claim has been exhausted is determined by the prison's requirements. *Jones v. Bock*, 549 U.S. 199, 218 (2007). A prisoner may not satisfy the PLRA exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Failure to exhaust available administrative remedies is fatal to individual claims as long as the administrative remedies were adequate. *Ross*, 136 S.Ct. at 1859-60.

**C.     New Mexico Grievance Procedures**

New Mexico Corrections Department has a formal written grievance procedure (Policy). Defendants' Response, Exhibit A (Doc. 42-1). Each inmate receives a written copy and an oral summary of the Policy during orientation and upon written request. *Id.* p. A-0007 ¶ 2. The Policy provides that grievable issues include: disputes about interpretation of the policy, individual employee actions, perceived reprisal for use of or participation in the grievance process, and any other matter related to conditions of care or supervision within the authority of the New Mexico

Corrections Department or its contractors. *Id.* at p. A-0009, ¶ E(1)(a)-(f). Nongrievable issues include "[a]ny matter over which the Corrections Department has no control, for example: parole decision, sentences, and claims regarding inmate compensation which is regulated by statute." *Id.* at ¶ E(2)(a)-(g).

The Policy requires an inmate to file informal complaints within five (5) calendar days from the date of the incident provoking the complaint. *Id*. at A-0014 ¶A (1). If the informal complaint does not resolve the complaint within seven (7) working days, the inmate may file a formal grievance, which also must be submitted within five (5) working days[18] of the incident initiating the complaint.[19] *Id.*

### III. ANALYSIS

**A.   Claim I and Claim II**

Claims I and II allege that Defendant Christine Salazar violated Plaintiff's Eighth and Fourteenth Amendment rights when she interfered with Plaintiff's parole rights. Defendants argue that Court should grant summary judgment as to them on Claims I and II because neither claim implicates them. To plead a cognizable § 1983 claim, a plaintiff must include the following two elements: "(1) deprivation of a federally protected right by (2) an actor acting under color of state law." *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016) (citing *D.T. ex rel. M. T. v. Indep. Sch. Dist. No. 16*, 894 F.2d 1176, 1186 (10th Cir. 1990)). Claims I and II do not name, state, or imply that Officer Chavira or Captain Deberry hampered

---

[18] There is an anomaly in the Policy in that both the informal complaint and the formal complaint must be submitted within five (5) working days of the incident that initiates the complaint. *Compare* Exhibit A (Doc. 42-1), p. 15 ¶ A(1)(a) ("The inmate shall first file an informal complaint using the **Inmate Informal Complaint** form (*CD-150501.3* within five (5) calendar days from the date of the incident giving rise to the complaint"), *with* ¶ A(1)(b) ("If this informal effort fails to resolve the complaint within seven (7) working days of receipt of the complaint, the inmate may file an **Inmate Grievance** form (*CD-150501.1*).The inmate must file the formal grievance within five (5) calendar days of the date of the incident giving rise to the complaint").
[19] The Policy excepts from these time limits only complaints that fall under Prison Rape Elimination Act, 34 U.S.C. §§ 301301-09 .

9

or interfered with Plaintiff's parole plan; Claims I and II name only Defendant Christine Salazar. Because Claims I and II make no factual or legal allegations against Defendants, there is no genuine issue of material fact as to them and summary judgment is appropriate.

**B.     Claim III**

In Claim III, Plaintiff asserts Defendants violated Plaintiff's Eighth Amendment rights when Defendants took actions resulting in Plaintiff's mental and physical injury. Defendants counter that Plaintiff has failed to exhaust his administrative remedies as required by the PLRA on Claim III and seek summary judgment on this claim. A claim that a prisoner has failed to exhaust administrative remedies is an affirmative defense and the burden is on the defendant to assert and prove the plaintiff did not use administrative remedies. *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). If a defendant establishes non-exhaustion, then the onus falls on the plaintiff to show that remedies were unavailable to him." *Id.*

*1.     Plaintiff Did Not Exhaust His Administrative Remedies*

Plaintiff's Amended Complaint alleges that while he was incarcerated at CNMCF, the actions of Officer Chavira and Captain Deberry on December 20, 2013 resulted in Plaintiff's mental and physical injury. On that date, Officer Chavira and Captain Deberry were correctional employees. The Policy states that claims arising from the actions of correctional employees are grievable issues covered by its guidelines. Claim III of Plaintiff's Amended Complaint is a grievable claim. Under the PLRA, the Court must dismiss Claim III unless Plaintiff exhausted all administrative remedies prior to filing his Amended Complaint.

Plaintiff argues that he did exhaust administrative remedies because he filed an Informal Grievance on February 4, 2014, and a Formal Grievance on February 18, 2014. Both grievances make claims based, in part, on the December 20, 2013 events. Notably, neither grievance accuses

10

Officer Chavira or Captain Deberry of any wrongdoing. The Policy requires inmates to file grievances within five days of the event that gave rise to the complaint. To be timely, Plaintiff should have filed any assertions based on December 20, 2013 events within five days of the events, or by December 25, 2013. Plaintiff did not do so. An untimely grievance bars a future suit unless Plaintiff shows that administrative procedures were inadequate because they were unavailable. *See Ross*, 136 S.Ct. at 1858.

### 2. *Plaintiff Has Not Shown Administrative Procedures Were Unavailable to Him*

Under §1997e(a) a Plaintiff only must exhaust "available remedies." An assertion that administrative procedures were unavailable to a plaintiff is a defense to the exhaustion requirement. *Ross*, 136 S.Ct. at 1858. The Supreme Court has found three circumstances when an administrative remedy is not available. *Id.* at 1859. First, an administrative procedure is unavailable when "officers are unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, if the rules governing the administrative procedures are so confusing no reasonable petitioner can use them, the procedures are unavailable. *Id.* Third, administrative procedures are unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. Plaintiff asserts all three circumstances support his argument that administrative procedures were unavailable to him.

Plaintiff alleges that the grievance officer and the unit manager at WNMCF, Ms. Barela, were unable or unwilling to help him with Plaintiff's Informal and the Formal Grievance. Assuming *arguendo* Plaintiff's allegations are true, they do not support his argument. Whether in February 2014 the grievance officer and Ms. Barela refused to help him file a grievance or whether they prevented him from filing a grievance is immaterial, because by February 2014,

11

any grievance Plaintiff filed was untimely. Nowhere in the Amended Complaint or in Plaintiff's Response does Plaintiff allege or provide evidence he could not file a *timely* grievance because correctional employees were unable or unwilling to provide relief or because they prevented Plaintiff from doing so.

Next, Plaintiff claims this was his first attempt at using the grievance process, and he implies that this is the reason why he did not observe the Policy rules on timeliness. However, Plaintiff does not clarify why a first attempt at use of the procedures should excuse a late claim.[20] Untimeliness alone does not justify a failure to comply with administrative remedies. *Woodford*, 548 U.S. at 83. Plaintiff provides no other evidence to support an argument he did not know how to use the procedures in the Policy.

Although Plaintiff provides some evidence that he was confused following his head injury, Plaintiff does not argue that his confusion or mental state kept him from filing a *timely* grievance. Even if Plaintiff had made that argument, it would not support his claim that procedures were unavailable because Plaintiff does not explain why he did not file any grievance against either Defendant based on the December 20, 2013 events. Significantly, Plaintiff also does not declare in any of his briefing that he was unaware of facts that would have supported a timely grievance against Defendants.[21] In fact, Plaintiff's evidence indicates that on or about the time Plaintiff mailed his Formal Grievance, Plaintiff did know he might have a claim against Defendants.[22]

---

[20] Defendants' evidence shows that at least one time before the December 20, 2013 events, Plaintiff used the grievance procedure to complain about not receiving mail. *See* Defendants' Response, Appendix B, Doc. 42-2, p. 7.
[21] In the Amended Complaint, Plaintiff includes his affidavit that in November 2013, Officer Chavira threatened him. Amended Complaint (Doc. 19), Exhibit E, p. 36. There is no evidence Plaintiff filed a grievance based on that incident.
[22] Plaintiff includes three affidavits labeled "Declarations" by Daniel Munoz (Affidavits) in the Amended Complaint. All three are dated September 9, 2017. In the Affidavits, Mr. Munoz contends that on December 20, 2013, he heard from other inmates that Officer Chavira and Officer Thorton physically assaulted Plaintiff "in the strip cage." In the Declarations, Mr. Munoz states that he did not see Plaintiff again until February 11, 2014 when he was transferred to WNMCF. Amended Complaint (Doc. 19), Declaration 1, pp. 37-38, Declaration II, pp. 39-52, Declaration III, pp. 41-42, Notes 1, pp. 43-44.

The Court entered its Order to Show Cause on March 29, 2018. On April 5, 2018, the Court gave Plaintiff until July 2, 2018, or approximately three months, to respond to its Order to Show Cause. The Court finds that Plaintiff had adequate notice of the Order to Show Cause and adequate time to respond to it.

Defendants have shown there is no genuine issue of material fact as to them on Claims I and II and the Court will grant summary judgment to Officer Chavira and Captain Deberry on these claims. In Plaintiff's Response to the Court's Order to Show Cause, Plaintiff failed to show that on Claim III he complied with the PLRA requirement to exhaust administrative remedies prior to bringing an §1983 claim or that he meets an exception to the PLRA exhaustion requirement. The Court will grant summary judgment on Claim III as to Defendants Officer Chavira and Captain Deberry.

IT IS ORDERED that Defendants' request for summary judgment as to Officer Chavira and Captain Deberry on Claims I, II and III made in Defendants' Response to the Court's *sua sponte* Order to Show Cause (Doc. 34) is GRANTED.

/s/ James A. Parker
SENIOR UNITED STATES DISTRICT JUDGE